1999 UT 16

**WATER & ENERGY SYSTEMS TECHNOLOGY, INC., Plaintiff and Appellee,**

v.

**Steven L. KEIL, Defendant and Appellant.**

**No. 980250.**

Supreme Court of Utah.

Feb. 19, 1999.

Joseph C. Rust, Salt Lake City, for Appellee.

Thomas R. Blonquist, Salt Lake City, for Appellant.

DURHAM, Associate Chief Justice:

¶ 1 We granted appellant Steven Keil's petition for an interlocutory appeal from the district court's grant of a preliminary injunction in favor of plaintiff Water & Energy Systems Technology, Inc. ("WEST").

¶ 2 For approximately twelve years prior to March 2, 1998, Keil worked for WEST as a water treatment chemical salesman. Keil voluntarily terminated his employment with WEST on March 2, 1998, and accepted a similar sales position with one of WEST's competitors, Brody Chemical ("Brody"). Keil did not have an employment contract with WEST nor did he sign a covenant not to compete with WEST should he terminate his employment with them. In the month prior to leaving WEST, Keil made several service calls for Brody and researched the availability of chemical ingredients for some of Brody's products. Keil also had meetings with Brody to discuss the viability of Brody's plans to increase its presence in the water treatment chemical business. During those meetings, Brody assured Keil that Brody's products could compete with WEST's.

¶ 3 While working for WEST, Keil had access to the formulae and prices for WEST's water treatment chemicals. During

his employment, Keil derived most of his commissions from sales of water treatment chemicals to Hill Air Force Base, Alliant Technologies, Laidlaw, Magnesium Corporation, Utah State University and E.G. & G. Immediately after leaving WEST's employ, Keil contacted the above clients to solicit their business for Brody, claiming that Brody's products were "very similar" to WEST's.

¶ 4 On March 9, 1998, WEST filed a complaint against Keil in district court alleging misappropriation of trade secrets. WEST claimed that Keil had misappropriated WEST's formulae and prices for its water treatment chemicals and supplied them to Brody, thereby giving Brody and Keil an unfair competitive advantage over WEST. At the time it filed the complaint, WEST also filed a motion for a preliminary injunction to enjoin Keil from contacting the six major clients he had while working for WEST and to prohibit Keil from disclosing to Brody any confidential information obtained from WEST. The district court heard and granted WEST's motion for preliminary injunction. Keil then filed a motion for relief from the preliminary injunction and for a new trial. The district court heard and denied Keil's motion. Keil then filed a petition seeking permission to file an interlocutory appeal from the district court's grant of the preliminary injunction. That petition was granted.

¶ 5 In this appeal, Keil asserts that the district court erred in granting WEST's motion for a preliminary injunction because WEST failed to meet its burden of showing that (1) WEST would suffer irreparable harm unless the injunction issued, (2) the injury to WEST substantially outweighs the damage the injunction would cause Keil, and (3) WEST is likely to succeed on the merits of the underlying action.

■ ¶ 6 We will not disturb a district court's grant of a preliminary injunction unless the district court abused its discretion or rendered a decision against the clear weight of the evidence. *See Kasco Services Corp. v. Benson*, 831 P.2d 86, 90 (Utah 1992) (citing *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 425 (Utah 1983)).

¶ 7 Rule 65A(e) of the Utah Rules of Civil Procedure sets forth the elements that must be present before a preliminary injunction may issue:

(1) The applicant will suffer irreparable harm unless the order or injunction issues;

(2) The threshold injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined.

(3) The order or injunction, if issued, would not be adverse to the public interest; and

(4) There is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation.

Utah R. Civ. P. 65A(e) (1998). Because we are persuaded that WEST failed to meet its burden under subsection four above, we reverse the district court's grant of a preliminary injunction.

■ ¶ 8 To meet the requirements of subsection four, an applicant must, at the very least, make a prima facie showing that the elements of its underlying claim can be proved. *See Utah State Road Comm'n v. Friberg*, 687 P.2d 821, 833 (Utah 1984) (suggesting that prima facie showing of the elements of the underlying claim is required for issuance of preliminary injunction); *see also Schwalm Elecs. Inc. v. Electrical Prods. Corp.*, 14 Ill.App.3d 348, 302 N.E.2d 394, 397 (1973) (stating prima facie case of misappropriation of trade secrets is necessary to support issuance of an injunction); *Paramount Office Supply Co. v. D.A. MacIsaac, Inc.* 524 A.2d 1099, 1101 (R.I.1987) (requiring prima facie evidence of misappropriation of customer list prior to ordering injunction).

■ ¶ 9 To establish a claim for misappropriation of trade secrets, WEST must show (1) the existence of a trade secret, (2) communication of the trade secret to Keil under an express or implied agreement limiting disclosure of the secret, and (3) Keil's use of the secret that injures WEST. *See Microbiological Research Corp. v. Muna*, 625 P.2d 690, 697–98 (Utah 1981). "An employer to obtain relief must establish that his former

employee's product is a *copy* of his own product." *Id.* at 696 (emphasis added).

¶ 10 Arguably, WEST established that its prices and formulae for its water treatment chemicals were secret and that it had an implied agreement with Keil limiting disclosure of the prices and formulae. In fact, even Keil's expert, Gary Loretitsch, testified that in the water treatment chemical business, formulae and prices are usually proprietary and held confidential.

█ ¶ 11 However, WEST failed to establish that Keil copied its prices or its products and supplied them to Brody. At the hearing, Keil introduced copies of Brody's formulae and Keil's best recollection of WEST's chemical formulae. The formulae are not identical. Furthermore, Keil's expert testified that although the formulae are somewhat similar, there are significant differences between Brody's and WEST's formulae. Loretitsch explained that Brody's formulae differ from WEST's in three ways. First, the individual ingredients in the formulae are different chemicals. Second, the percentages of the individual chemicals present in each formula are different. Finally, the ratios of the individual components with respect to each other in Brody's formulae are not the same as in WEST's. The expert then opined that Brody's formulae are not copied from WEST's. He then accounted for the similarities between WEST and Brody formulae by explaining that to some extent all the chemical formulations in this industry are driven by market and regulatory forces.

¶ 12 In contrast, WEST neither submitted its formulae to the trial court nor did it supply a price sheet. The court was forced to rely on Keil's best guess as to WEST's formulae and WEST's representation that the prices were the same. WEST did not introduce any expert testimony regarding whether Brody's formulae had in fact been copied from WEST. WEST relied on the self-serving statements of its president, Frank Leaver, who stated that Brody sold "almost duplicate products" after Keil began working for them. Notably, however, Leaver did not testify that Brody's formulae were copies of WEST's.

¶ 13 In addition to his expert's testimony, Keil introduced evidence illustrating that the water treatment chemical industry is relatively easy to break into. Several industry publications set forth suggested general chemical make-ups for water treatment chemicals. Both Keil and Brody president John Liddiard described how Brody arrived at the formulations for its products through consultation with Buckman Laboratories and affirmed that it did not copy its formulae from WEST.

¶ 14 Finally, the district court's own findings support our conclusion that the injunction was improperly granted. The court's findings indicate that it believed WEST's formulae, although not exact duplicates, were "very similar" to Brody's. Similarities which can be explained by industry or regulatory demands cannot suffice to meet the requirement that Brody copied WEST's confidential formulae, especially in light of the abundant testimony that the formulae were not copied and the substantial amount of information in the public domain regarding water treatment chemicals. WEST had the burden of producing evidence that would establish that its formulae were in fact stolen by Keil for use by Brody. It is hard to see how this burden could possibly have been met when WEST never submitted actual formulae to the trial court for comparison purposes.

¶ 15 In light of the foregoing, we find that the district court's grant of the preliminary injunction was against the clear weight of the evidence. WEST did not meet its burden of establishing a prima facie case that Keil copied confidential information and supplied that information to Brody. Consequently, we reverse the district court's grant of a preliminary injunction.

Chief Justice HOWE, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Associate Chief Justice DURHAM's opinion.