2010 UT 31

**USA POWER, LLC; USA Power Partners, LLC; and Spring Canyon Energy, LLC, Plaintiffs and Appellants,**

v.

**PACIFICORP; Jody L. Williams; and Holme Roberts & Owen, LLP, Defendants and Appellees.**

No. 20080176.

Supreme Court of Utah.

May 14, 2010.

Peggy A. Tomsic, Eric K. Schnibbe, J. Ryan Connelly, Salt Lake City, for plaintiffs.

Thomas R. Karrenberg, Stephen P. Horvat, Salt Lake City, for defendant Jody L. Williams

Peter W. Billings, Sr., Michael G. Jenkins, P. Bruce Badger, Salt Lake City, for defendants PacifiCorp and Holme Roberts & Owen.

NEHRING, Justice:

## INTRODUCTION

¶ 1 In this appeal, we review a district court's grant of summary judgment on three claims: misappropriation of trade secrets, breach of a confidentiality and nondisclosure agreement, and breach of an attorney's fiduciary duties of confidentiality and loyalty.

¶ 2 In August 2002, USA Power, LLC, a power plant developer, entered into negotiations with PacifiCorp, a utility company, to construct a power plant named Spring Canyon in Mona, Utah. PacifiCorp signed a confidentiality and nondisclosure agreement as part of those negotiations. Within a year, PacifiCorp decided that rather than purchase Spring Canyon from USA Power, it would build a similar power plant named Currant Creek outside Mona. As a result, USA Power sued PacifiCorp for misappropriation of trade secrets and breach of the confidentiality and nondisclosure agreement.

¶ 3 USA Power also sued its water law attorney Jody Williams and her law firm Holme Roberts & Owen, LLP ("HRO") for breach of their fiduciary duties of confidentiality and loyalty. USA Power alleges that Ms. Williams represented USA Power and PacifiCorp at the same time and disclosed to PacifiCorp confidential information that she obtained through her representation of USA Power.

¶ 4 The district court granted summary judgment in favor of PacifiCorp, Ms. Williams, and HRO. USA Power appeals. We reverse.

## BACKGROUND

### I. USA POWER CLAIMS THAT PACIFICORP MISAPPROPRIATED ITS TRADE SECRET

¶ 5 The first issue on appeal concerns whether USA Power provided PacifiCorp with information about developing a power plant that constituted a trade secret, and if so, whether PacifiCorp misappropriated that trade secret when it chose to develop its own power plant.

### A. USA Power Develops the Spring Canyon Project

¶ 6 USA Power was formed in 1996 for the purpose of locating, acquiring, and developing electric power generation sites. As a general practice, USA Power accumulated the assets necessary for a power plant but did not necessarily develop or operate the plants. In 2001, USA Power decided to focus on developing a power plant in Utah. After researching the area, USA Power selected Mona, Utah, as a viable site for a power plant. USA Power named the project "Spring Canyon" and formed Spring Canyon Energy, LLC to hold the necessary assets.

¶ 7 After consulting with multiple engineering and feasibility experts, USA Power designated Spring Canyon as an approximately 550 megawatt, air-cooled, gas-fired, combined cycle plant in a 2x1 configuration with 7FA GE turbines, duct firing, and zero water discharge technology. USA Power then made efforts to accumulate other necessary assets, including securing an option to purchase the identified property, obtaining a zoning variance, securing options to purchase water rights, preparing documents to change the point of diversion for the purchased water rights, preparing and submitting an air quality permit application, designating a wastewater, gas line and power transmission corridor, and preparing development plans. USA Power also obtained a commitment from Questar corporation to provide natural gas to Spring Canyon and a Federal Energy Regulatory Commission ("FERC") determination that Spring Canyon qualified as an exempt wholesale generator. Many of the documents filed, including the Notice of Intent ("NOI") filed with the Utah Department of Environmental Quality's Division of Air Quality, are public documents. The NOI laid out many of the details of the proposed plant, including USA Power's planned technology.

¶ 8 One year later, USA Power marketed Spring Canyon. USA Power met with PacifiCorp on August 22, 2002, to discuss Pacifi-

Corp's potential purchase and development of Spring Canyon. PacifiCorp was represented by Mr. Rand Thurgood. USA Power claims that it informed PacifiCorp that it would not discuss the project in detail until PacifiCorp signed a confidentiality agreement. After PacifiCorp signed a Confidentiality and Non–Disclosure Agreement at the parties' next meeting on September 11, 2002, USA Power provided PacifiCorp three binders of information concerning Spring Canyon marked "confidential." About one month prior to receiving the three binders, PacifiCorp had already received a copy of the public NOI filed by USA Power, which revealed certain details about Spring Canyon.

¶ 9 On March 14, 2003, after a series of offers and counteroffers, PacifiCorp expressed interest in purchasing Spring Canyon for three million dollars and a five-year development agreement. On March 17, however, PacifiCorp informed USA Power that rather than purchase Spring Canyon, it would instead issue a Request for Proposals ("RFP"), a regulatory process by which a utility company may collect bids to fulfill its identified power needs. USA Power submitted four bid proposals. According to an e-mail between PacifiCorp employees, at least two of USA Power's bids came in second to the next best alternative.

### B. PacifiCorp Develops the Currant Creek Project

¶ 10 Around the same time that USA Power was developing Spring Canyon, Panda Energy, a power plant developer from Texas, also initiated plans to develop a power plant adjacent to PacifiCorp's switching station near Mona, Utah. On February 20, 2003—after PacifiCorp had received the three confidential binders from USA Power—PacifiCorp purchased the assets accumulated by Panda, which included property purchase agreements, environmental assessment reports, as well as water, air, and meteorological data reports. USA Power alleges that in comparison to Spring Canyon, Panda's project was limited; it never obtained water rights, an air permit, rezoning, or a transmission agreement for the Mona substation.

¶ 11 In 2003, PacifiCorp hired the engineering firm Shaw/Stone & Webster to help convert the Panda assets into PacifiCorp's own power plant named Currant Creek. Shaw/Stone & Webster had recently designed, engineered, and constructed the Apex 1 power plant in Las Vegas, Nevada, for the Mirant Corporation. In April 2003—after PacifiCorp had decided to issue an RFP rather than purchase Spring Canyon from USA Power—PacifiCorp requested a cost analysis for Currant Creek from Shaw/Stone & Webster; the analysis was delivered to PacifiCorp on June 9, 2003. After combining the information from Shaw/Stone & Webster and its own experience, PacifiCorp submitted the Currant Creek plans as a "next best alternative" by which to measure other bids in the RFP process.

¶ 12 In support of its contention that it did not misappropriate any confidential information provided by USA Power, PacifiCorp argues that both the Apex 1 and Currant Creek designs are based on Shaw/Stone & Webster's standard design for a 2x1 combined-cycle power plant with air cooling and that both plants are virtually identical. PacifiCorp also argues that any peculiarities specific to Spring Canyon were publically disclosed in the NOI. In contrast, USA Power argues that the short time it took Shaw/ Stone & Webster to prepare the cost analysis shows that PacifiCorp improperly used the confidential information USA Power disclosed in the three binders, especially information concerning the viability of a dry-cooled plant in Mona.

### C. Rather than Purchase Spring Canyon From USA Power, PacifiCorp Pursues Its Own Currant Creek Power Plant

¶ 13 By August 2003, PacifiCorp determined that its own Currant Creek power plant, as the next best alternative, was more economically feasible than the other bids. In September 2003, PacifiCorp's board of directors approved Currant Creek for construction and announced that it had awarded itself the bid on November 3, 2003, when it filed an application with the Public Service Commission ("PSC") for a Certificate of Convenience and Necessity ("CC & N"). The

PSC awarded PacifiCorp the CC & N in March 2004, stating "review of the alternative actions discussed above [including Spring Canyon] shows no better alternative at the present time than proceeding with building [the Currant Creek plant]." Approval of the CC & N effectively eliminated the possibility of constructing any other power plant, including Spring Canyon, in Mona.

## II. USA POWER CLAIMS THAT ITS WATER LAW ATTORNEY AND HER LAW FIRM BREACHED THEIR FIDUCIARY DUTIES OF LOYALTY AND CONFIDENTIALITY

¶ 14 The second issue on appeal concerns USA Power's claim that attorney Jody Williams and her law firm HRO breached their fiduciary duties of confidentiality and loyalty. USA Power alleges that Ms. Williams represented both USA Power and PacifiCorp at the same time and disclosed to PacifiCorp confidential information she obtained in the course of her representation of USA Power.

### A. Ms. Williams' Representation of USA Power

¶ 15 In 2001, USA Power retained Ms. Williams, a water law attorney, as part of its efforts to develop Spring Canyon.[1] The parties dispute both the scope of Ms. Williams' representation of USA Power and the date her representation terminated.

¶ 16 As to the scope of her representation, the parties agree that Ms. Williams (1) filed the necessary documents to form Spring Canyon Energy, LLC; (2) investigated potential water rights for use in Mona and helped to secure options to purchase water rights from two gentlemen, Mr. Keyte and Mr. Garrett, which have since expired; and (3) in connection with those purchase options, filed change applications with the State Engineer, a letter regarding the Keyte and Gar-

rett water rights and transactions, and a memoranda addressing the due diligence undertaken regarding those water rights. USA Power additionally alleges that Ms. Williams assisted in other aspects of the Spring Canyon project, such as drafting an option to purchase real property, obtaining necessary zoning and air permits, contacting PacifiCorp to negotiate an interconnection agreement, and generally advising USA Power on the viability of Spring Canyon.

¶ 17 The parties also dispute when Ms. Williams' representation of USA Power terminated. USA Power alleges that Ms. Williams actively represented it from April 2001 through November 2003. Ms. Williams claims she completed all outstanding work for USA Power on January 22, 2003.[2]

### B. Ms. Williams' Representation of PacifiCorp

¶ 18 In March 2003, Rand Thurgood, counsel for PacifiCorp, contacted and retained Ms. Williams to assist PacifiCorp in the purchase of water rights. Ms. Williams told Mr. Thurgood that she had no existing conflicts with USA Power at that time because her work for USA Power was completed.

¶ 19 In July 2003, Ms. Williams became aware of water rights through WW Ranches, LLC, a business specializing in the acquisition and sale of water rights. WW Ranches suggested PacifiCorp acquire water rights in another county, change the diversion point, and use that water for its needs at Currant Creek. In September 2003, WW Ranches and PacifiCorp entered into a water rights purchase agreement, pursuant to which WW Ranches sold PacifiCorp water shares and submitted the necessary change applications to the Utah State Engineer.

¶ 20 USA Power argues that Ms. Williams disclosed confidential information obtained during her representation of USA Power to

---

1. When USA Power first retained Ms. Williams, she was a partner at the law firm Kruse, Landa & Maycock. In July 2002, Ms. Williams terminated her relationship with that firm and became a partner at the law firm HRO. Ms. Williams maintained her representation of USA Power after switching to HRO.

2. Ms. Williams acknowledges that she received a "single, isolated question about air credits in September 2003" and "referred the inquiry to another [HRO] attorney, who responded on September 17, 2003." But she rejects any contention that this phone call shows continued representation of USA Power.

benefit PacifiCorp. Specifically, USA Power argues that "[Ms.] Williams contacted the very pool of potential sellers that she had developed on USA Power's dollar to attempt to purchase water rights for PacifiCorp" and disclosed the range of USA Power's potential purchase prices to Mr. Thurgood. In contrast, Ms. Williams maintains that her assistance was unnecessary to obtain the water rights WW Ranches subsequently located, acquired, and sold to PacifiCorp or to make the change application to the State Engineer. Michael Jenkins, assistant general counsel to PacifiCorp, testified in an affidavit that had Ms. Williams declined to represent PacifiCorp, he was prepared to contact other water law attorneys. Moreover, other attorneys from a different law firm, Michael Zimmer and David Ringer, aided USA Power in its negotiations with PacifiCorp. Ms. Williams also claims that she never discussed with PacifiCorp or WW Ranches the price USA Power had agreed to pay for its own water rights, or attempted to acquire water rights from Mr. Keyte or Mr. Garrett on behalf of PacifiCorp.

¶ 21 The parties also dispute whether Ms. Williams played a significant role in developing Currant Creek. USA Power alleges that Ms. Williams became a member of PacifiCorp's "development team" where she attended meetings and advised PacifiCorp on all aspects related to Currant Creek. USA Power further alleges that Ms. Williams drafted documents to acquire water rights for Currant Creek and reviewed change applications, including USA Power's.

¶ 22 In contrast, Ms. Williams asserts she was not involved in PacifiCorp's decision to conduct the RFP, its evaluation of bids, or its decision to construct Currant Creek. She also asserts that none of USA Power's bids came in higher than fourth place in the RFP process. She further maintains that she neither participated in the marketing of Currant Creek nor discussed USA Power's Spring Canyon project with PacifiCorp.

### III. THE DISTRICT COURT GRANTS SUMMARY JUDGMENT TO PACIFI-CORP AND MS. WILLIAMS ON BOTH ISSUES RESPECTIVELY

¶ 23 USA Power sued PacifiCorp for misappropriation of trade secrets and breach of contract, among other things. USA Power also sued Ms. Williams and HRO for breach of their fiduciary duties of confidentiality and loyalty. The district court granted summary judgment in favor of PacifiCorp, Ms. Williams, and HRO.

¶ 24 As to PacifiCorp, the district court first determined that contrary to Utah Rule of Civil Procedure 7(c)(3)(A), USA Power merely "argu[ed] about the implication of the facts asserted [by PacifiCorp] instead of 'specifically controverting' them with the factual record." The court therefore deemed all facts not "specifically controverted" as admitted. The district court then granted summary judgment to PacifiCorp on USA Power's misappropriation of trade secrets claim because it determined that USA Power failed to provide sufficient evidence that Spring Canyon was a trade secret or that PacifiCorp more likely than not misappropriated any possible trade secrets. The district court also granted summary judgment to PacifiCorp on USA Power's breach of contract and breach of the implied covenant of good faith and fair dealing claims because it concluded that USA Power presented no evidence that PacifiCorp used the confidential information disclosed in the three binders.

¶ 25 As to Ms. Williams and HRO, the district court granted summary judgment in their favor because it concluded that USA Power did not present evidence from which a reasonable jury could determine that Ms. Williams disclosed USA Power's confidential information to PacifiCorp. The district court further held that even if Ms. Williams had breached her duty of loyalty, USA Power had not presented evidence by which a jury could find that any breach caused harm to USA Power.

¶ 26 On appeal, USA Power asks this court to address whether the district court erred when it (1) deemed as admitted many of PacifiCorp's statements of material fact on the basis that USA Power failed to "specifically controvert" those facts under Utah Rule of Civil Procedure 7(c)(3)(A), (2) granted summary judgment to PacifiCorp on USA

Power's misappropriation of trade secrets claim, and (3) granted summary judgment to Ms. Williams and HRO[3] on USA Power's breach of fiduciary duty claims. We address each issue in turn. This court has jurisdiction pursuant to section 78A–3–102(3)(j) (2008) of the Utah Code.

## STANDARD OF REVIEW

¶ 27 " '[T]he interpretation of a rule of procedure is a question of law that we review for correctness.' " *State v. Rodrigues,* 2009 UT 62, ¶ 11, 218 P.3d 610 (alteration in original) (quoting *Brown v. Glover,* 2000 UT 89, ¶ 15, 16 P.3d 540). Similarly, whether a party has complied with a rule of civil procedure is a question of law, and "we accord no particular deference to the determinations of law made by the trial court but review them for correctness." *See Avila v. Winn,* 794 P.2d 20, 22 (Utah 1990).

¶ 28 Furthermore, "[w]e review the district court's summary judgment ruling for correctness and view all facts and reasonable inferences in favor of the nonmoving party." *W. Water, LLC v. Olds,* 2008 UT 18, ¶ 14, 184 P.3d 578 (citations omitted).

---

**3.** We hereinafter refer to Ms. Williams and HRO collectively as "Ms. Williams."

**4.** Specifically, the court deemed as admitted facts numbered 1–3, and 5–11, which "identify Panda Energy's development of a power plant in Mona, next to PacifiCorp's transmission station, PacifiCorp's knowledge of Panda's development before ever meeting plaintiffs' and PacifiCorp's ultimate purchase of Panda's assets necessary for the development of the Currant Creek Power plant." The district court also deemed as admitted facts numbered 20–29, "which identify PacifiCorp's and Shaw/Stone & Webster's design, engineering and construction of the Currant Creek Power Plant." The court stated,

> With respect to Shaw/Stone & Webster, it is undisputed that they built a sister plant to the Currant Creek Power Plant (Apex 1), and that the Currant Creek Power Plant represents PacifiCorp's and Shaw/Stone & Webster's own work ... [that] all of their component parts and technologies are well understood and widely utilized in the electric power plant industry ... [and that] the design, engineering and construction of the Currant Creek Power

## ANALYSIS

**I. THE DISTRICT COURT ERRED WHEN IT DETERMINED THAT, UNDER UTAH RULE OF CIVIL PROCEDURE 7(c)(3)(A), INFERENCES CANNOT BE USED TO "CONTROVERT" A PARTY'S UNDISPUTED STATEMENT OF FACTS**

¶ 29 USA Power argues that the district court erred when it deemed many of PacifiCorp's statements of fact as admitted on the basis that USA Power failed to "specifically controvert" those particular facts. The district court found that USA Power had "employed the practice contrary to rule 7(c)(3)(A) of arguing about the implication of the facts asserted instead of 'specifically controverting' them with the factual record." The district court then deemed a number of PacifiCorp's factual assertions as admitted.[4]

¶ 30 Whether a party has complied with a rule of civil procedure is a question of law that we review for correctness. *See Avila v. Winn,* 794 P.2d 20, 22 (Utah 1990).[5] Rule 7(c)(3)(B) of the Utah Rules of Civil Procedure requires that a memorandum in opposition to a motion for summary judgment "contain a verbatim restatement of each of the moving party's facts that is controverted," and "provide an explanation of the grounds

> Plant was not based upon nor utilized any information from or about USA Power, USA Power Partners, Spring Canyon Energy or the Spring Canyon Energy project.

Finally, the district court found that facts numbered 13 and 17 "demonstrate that plaintiffs' concept, vision and claimed confidential information were of public record, and ... the information contained therein being generally known and readily ascertainable from the public record ... cannot possibly constitute trade secrets."

**5.** PacifiCorp argues we should review the district court's decision to deem PacifiCorp's statements of undisputed fact as admitted for an abuse of discretion. We disagree. Utah Rule of Civil Procedure 7(c)(3)(A) states, "Each fact set forth in the moving party's memorandum *is* deemed admitted for the purpose of summary judgment unless controverted by the responding party." (emphasis added.) A trial judge therefore has no discretion in deeming facts admitted unless controverted. The meaning of "controverted," and consequently whether the nonmoving party has properly controverted a statement of fact, is therefore a question of law, which we review for correctness.

for any dispute, supported by citation to relevant materials." If not properly controverted by the nonmoving party, "[e]ach [uncontroverted] fact set forth in the moving party's memorandum is deemed admitted for the purpose of summary judgment." Utah R. Civ. P. 7(c)(3)(A).

¶ 31 Both parties place the weight of their argument on the meaning of the word "controverted." PacifiCorp argues that a party must specifically controvert a statement of fact with another statement of fact; USA Power argues that even if a particular fact is undisputed, that fact can be controverted by presenting a contrary inference or theory of what that particular fact implies. We agree with USA Power.

▆▆▆ ¶ 32 Even absent a "complete conflict as to certain facts," a dispute of "the understanding, intention, and consequences of those facts" may defeat summary judgment. *Sandberg v. Klein*, 576 P.2d 1291, 1292 (Utah 1978). We have stated that "[t]he [trial] court must recognize that a party's claim that there are no issues of fact relates to that party's theory of the case and should not be construed as support for the adversary's argument or motion." *Newman v. White Water Whirlpool*, 2008 UT 79, ¶ 15, 197 P.3d 654 (alteration in original) (internal quotation marks omitted). Thus, "the standard is not whether *these parties'* minds differ—which they obviously do—but whether reasonable jurors, having been properly instructed by the trial court, would be unable to come to any other conclusion." *Id.* ¶ 11.

▆▆▆ ¶ 33 We begin with the well-recognized statement that in a summary judgment proceeding, all facts and the reasonable inferences to be made therefrom should be construed in a light favorable to the nonmoving party. *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258, 1261 (Utah 1984). In some cases, the parties may agree on the objective statement of the facts, but may fundamentally disagree on the reasonable inferences to be made from those facts. In such instances, if we were to hold that the nonmoving party must present a specific fact to controvert a statement of fact by the moving party, we would diminish the important role reasonable

inferences play in a district court's decision to grant summary judgment. Even if the moving party's objective statement of the facts are agreed upon, reasonable inferences made from those undisputed facts can indeed create a genuine issue of material fact. That the objective facts are undisputed does not mean that no genuine issues remain as to those facts.

¶ 34 We address a few of the facts deemed admitted by the trial court to demonstrate the ways in which the nonmoving party may present the reasonable inferences to be made from a statement of fact such that an issue of material fact remains. PacifiCorp stated to the district court:

> In late 2000 and early 2001 a successful power plant developer from Texas, known as Panda Energy, began its development of a combined cycle power plant site immediately adjacent to PacifiCorp's switching station near the town of Mona, in Juab County, Utah. The Deseret News reported Panda's plans in an article published July 19, 2001.

USA Power responded as follows:

> Disputed. PacifiCorp's description of Panda as "successful" is not a material fact but a self-serving statement. In fact, Panda never took any substantive steps to develop the Mona project besides buying the land ("which was amazingly cheap") and acquiring the meteorological data ... Panda's initial objective in 2001–2003 was to build a merchant plant, but the project had become "kind of iffy" when Panda's financing began to dwindle.

¶ 35 PacifiCorp is correct in its assertion that at no point did USA Power properly cite to relevant materials that showed, for example, that Panda Energy began development on a different day or location, or that Panda Energy did not begin to develop a combined-cycle plant. We conclude, however, that USA Power controverted PacifiCorp's statement of fact by presenting to the district court contrary inferences to be made from the objective facts. For example, USA Power presented to the court the argument that a fact-finder could reasonably infer that the purchase of the Panda assets had little to no

bearing on whether PacifiCorp misappropriated USA Power's trade secret.

¶ 36 Another example shows the extent to which an inference controverts an undisputed statement of fact. PacifiCorp stated:

> The design, engineering and construction of Currant Creek represents Shaw/Stone & Webster's own efforts. Shaw/Stone & Webster did not use any information from, or about, USA Power, USA Power partners, Spring Canyon Energy, or the Spring Canyon Energy project, in *any* aspect of the Currant Creek power plant, whatsoever.

USA Power responded:

> Disputed. As stated in [other responses], Shaw did not become involved in the Currant Creek project until two months *after* PacifiCorp had purchased the Mona site and committed all its resources to developing a project there. This decision—which was the only tangible response by Thurgood's group in acquiring an option to respond to PacifiCorp's own RFP—was made in January–February 2003 after PacifiCorp reviewed all the confidential information and work product of Spring Canyon for developing an air-cooled 500–megawatt combined cycle power plant at that site. Shaw/Stone & Webster had no role in that process.

¶ 37 USA Power controverted PacifiCorp's statement of fact in this instance because it indicated that even accepting PacifiCorp's statement as true, the statement *did not* support a reasonable inference that PacifiCorp never, at any point, misappropriated a trade secret. This is exactly the type of dispute as to "the understanding, intention, and consequences of those facts" that could create a material issue of fact, which arises from an inference. *Sandberg*, 576 P.2d at 1292. The district court then is only left to determine whether the resulting factual inference, as determined by reading together PacifiCorp's statement of fact and USA Power's contravention of that fact, is reasonable.

¶ 38 The district court therefore erred in its determination that USA Power could not controvert PacifiCorp's statements of fact by presenting to the court the contrary inferences to be made from those facts. Had the district court found each fact controverted, it would have been required to determine whether the inferences argued by USA Power fell under the meaning of "reasonable." We do not address the reasonableness of each inference argued by USA Power here because it is not necessary for the rest of this opinion.[6]

## II. THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO PACIFICORP ON USA POWER'S MISAPPROPRIATION OF TRADE SECRETS CLAIM BECAUSE IT FAILED TO CONSIDER THAT A CULMINATION OF INFORMATION ALREADY IN THE PUBLIC DOMAIN CAN CONSTITUTE A TRADE SECRET

■ ¶ 39 To establish a claim for misappropriation of trade secrets, USA Power must show "(1) the existence of a trade secret, (2) communication of the trade secret to [PacifiCorp] under an express or implied agreement limiting disclosure of the secret, and (3) [PacifiCorp's] use of the secret that injures [USA Power]." *See Water & Energy Sys. Tech., Inc. v. Keil*, 1999 UT 16, ¶ 9, 974 P.2d 821. We discuss (1) whether the district court erred in determining that USA Power did not present facts to the district court from which the district court could determine USA Power had a trade secret and (2) whether the district court erred in holding that PacifiCorp did not misappropriate USA Power's trade secret as a matter of law.

### A. A "Vision" or Compilation of Information Already Within the Public Domain May Constitute a Trade Secret

¶ 40 The district court held that because the "undisputed material facts demonstrate

---

6. For instance, we note that some of USA Power's responses to PacifiCorp's statements of fact say nothing more than the following: "Disputed. The description in the above paragraph is not supported by the citations." This does not controvert PacifiCorp's statement of fact. To controvert a statement of fact with an inference, the nonmoving party is required to specifically state the inference to be made.

that [USA Power's] concept, vision and claimed confidential information were of public record, and were disclosed to PacifiCorp by the public record.... [such information] cannot possibly constitute trade secrets as defined by Utah Code Ann., § 13–24–2(4)." The court reasoned that the documents and ideas that USA Power argued were trade secrets did not constitute trade secrets because USA Power failed to "make any effort to demonstrate specifically that PacifiCorp could not have readily ascertained [the information] either through public information, [USA Power's] filings with the Utah Division of Air Quality, knowledge generally known in the industry, the independent analysis and evaluations performed by Shaw/Stone & Webster, and PacifiCorp's prior knowledge and purchase of the Panda assets."

¶ 41 When undertaking a trade secret analysis, the threshold question is "whether, in fact, there is a trade secret to be misappropriated." *Microbiological Research Corp. v. Muna,* 625 P.2d 690, 696 (Utah 1981). Utah has adopted the Uniform Trade Secrets Act. Utah Code section 13–24–2(4) (2009) describes a trade secret as

> (4) ... information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

¶ 42 USA Power does not contend that each piece of information presented to PacifiCorp is a trade secret; it acknowledges that each piece, taken individually, is generally known and readily ascertainable. Rather, USA Power argues that the viability of a power plant in Mona, or in other words the "Spring Canyon vision," constitutes a trade

secret. The district court held that a "vision" alone is not a trade secret if the plaintiff cannot articulate specific features that are not generally known and not generally ascertainable. We must therefore address whether an alchemy of information may constitute a trade secret when its separate parts are each generally known and readily ascertainable, but, when analyzed together such parts derive independent economic value.[7]

¶ 43 "[A] unique combination of generally known elements or steps can qualify as a trade secret, if it represents a valuable contribution attributable to the independent efforts of the one claiming to have conceived it." *Microbiological Research Corp. v. Muna,* 625 P.2d at 696 (internal quotation marks omitted). "[A] trade secret may include a grouping in which the components are in the public domain but there has been accomplished an effective, successful and valuable integration of those public elements such that the owner derives a competitive advantage from it." *Enter. Leasing Co. v. Ehmke,* 197 Ariz. 144, 3 P.3d 1064, 1069 (Ariz.Ct.App.1999); *see also Minn. Mining & Mfg. Co. v. Pribyl,* 259 F.3d 587, 595–96 (7th Cir.2001); *Rivendell Forest Prods., Ltd. v. Georgia–Pac. Corp.,* 28 F.3d 1042, 1045–46 (10th Cir.1994) (reversing summary judgment where the district court held that computer software taken as a whole could not constitute a trade secret if its components are known to the public).

¶ 44 The compilation of information already within the public domain, however, must not itself be generally known or readily ascertainable. *See Microbiological Research,* 625 P.2d at 696. The "generally known or readily ascertainable" standard "cannot be viewed as whether the information is generally known and readily ascertainable to the general public, but, based on the defendant['s] knowledge and experience, whether the information was known or ascertainable to [the defendant]." *Utah Med. Prods., Inc. v. Clinical Innovations Assocs.,*

---

7. The Trade Secret Act also requires that the trade secret be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Utah Code Ann. § 13–24–2(4)(b). Because the issue before us is whether the Spring Canyon vision can be a trade secret generally, and because the district court did not address section 4(b), we do not discuss whether USA Power took reasonable efforts to maintain the secrecy of any alleged trade secret.

*Inc.,* 79 F.Supp.2d 1290, 1312 (D.Utah 1999) (citing *Microbiological Research,* 625 P.2d at 699). "It is not enough to point to broad areas of technology and assert ·that something there must have been secret and misappropriated." *Composite Marine Propellers, Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir.1992) (per curiam); *see also AMP Inc. v. Fleischhacker,* 823 F.2d 1199, 1203 (7th Cir.1987) (Plaintiff does not meet its burden by merely "producing long lists of general areas of information which contain unidentified trade secrets.").

■■■ ¶ 45 We hold that a compilation of information within the public domain may constitute a trade secret. To determine whether the product, design, or vision constitutes a trade secret is an intensely factual inquiry to be conducted by the trial court. Although many factors may be taken into account, the Restatement of Torts section 757 provides guidance on the factors a court may consider. These include the following:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in its business; (3) the extent of measures taken by the business to guard the secrecy of its information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Restatement of Torts § 757 cmt. b (1939). *See also Enter. Leasing Co.,* 3 P.3d at 1069 n. 6. (explaining that although these six factors "are not required by the [Uniform Trade Secrets Act], they provide additional guidance").[8] We hold these factors may be useful to district courts in determining whether a compilation of items or ideas already in the public domain constitutes a trade secret.

■■ ¶ 46 The district court therefore erred in holding that the Spring Canyon vision did not constitute a trade secret as a matter of law. The facts considered by the district court, even if deemed undisputed under rule 7(c)(3)(A), require a trade secret analysis of the "vision" as a whole.

B. *The District Court Erred When It Concluded That USA Power Failed to Provide Any Evidence, Direct or Circumstantial, That PacifiCorp Misappropriated USA Power's Trade Secret*

¶ 47 Having concluded that a "vision" or compilation of information already within the public domain may constitute a trade secret, we next address whether the district court erred when it concluded that USA Power failed to provide any evidence that PacifiCorp misappropriated any of USA Power's trade secrets. The Utah Uniform Trade Secrets Act defines "misappropriation" as

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (i) used improper means to acquire knowledge of the trade secret; or
>
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>
> > (A) derived from or through a person who had utilized improper means to acquire it;
> >
> > (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> >
> > (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (iii) before a material change of his position, knew or had reason to know that it

---

**8.** We recognize that these six factors are not included in the Restatement (Second) of Torts because the field of Unfair Competition is no longer dependent upon Tort law. *See* Restatement (Second) Torts, Division 9, Interference with Advantageous Economic Relations, Intro-ductory Note (1979). Nonetheless, we include these six factors here because we believe they provide useful guidance in determining whether a compilation of items or ideas in the public domain constitutes a trade secret.

was a trade secret and that knowledge of it had been acquired by accident or mistake. Utah Code § 13–24–2(2) (2009).

¶ 48 The district court assumed *arguendo* that Utah law supported USA Power's argument that it could show misappropriation through a "web of circumstantial evidence from which the jury [could] draw inferences which convince them that it is more probable than not that PacifiCorp used plaintiffs' trade secrets." Nonetheless, the district court found that even though the circumstantial evidence presented by USA Power showed similarities between Spring Canyon and Currant Creek, similarities alone do not constitute misappropriation. We thus address whether a plaintiff may show misappropriation through circumstantial evidence and the level of circumstantial evidence that may meet the plaintiff's burden at the summary judgment stage.

**1. Circumstantial Evidence Is Adequate to Overcome Summary Judgment on the Issue of Misappropriation**

¶ 49 USA Power argues that it presented sufficient circumstantial evidence from which a jury could find that PacifiCorp misappropriated USA Power's trade secret. Some courts have held that a plaintiff may establish misappropriation of a trade secret with circumstantial evidence that shows access to similar information. *Stratienko v. Cordis Corp.,* 429 F.3d 592, 601–02 (6th Cir.2005); *see also Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,* 285 F.3d 1353, 1361 (Fed. Cir.2002); *Pioneer Hi–Bred Int'l. v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1240 (8th Cir.1994); *Sokol Crystal Prods. v. DSC Commc'ns Corp.,* 15 F.3d 1427, 1432 (7th Cir.1994); *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.,* 914 F.2d 556, 561 (4th Cir.1990); *Electro–Miniatures Corp. v. Wendon Co.,* 771 F.2d 23, 26 (2d Cir.1985); *SI Handling Sys., Inc. v. Heisley,* 753 F.2d 1244, 1261 (3d Cir.1985); *Droeger v. Welsh Sporting Goods Corp.,* 541 F.2d 790, 793 (9th Cir.1976).[9] This court implicitly adopted the

access and similarity rule in *Water & Energy Systems Technology, Inc. v. Keil,* 1999 UT 16, ¶ 14, 974 P.2d 821. In *Keil,* we held that the plaintiff had not presented evidence that a rival water purification company copied its formulas. *Id.* ¶¶ 11–15. We suggested, however, that had the plaintiff presented testimony that the formulas were similar, combined with evidence that the plaintiff's former employee had disclosed the formulas to defendant, a preliminary injunction may have been appropriate. *Id.*

¶ 50 Accordingly, we hold that a jury can infer misappropriation under the Utah Trade Secrets Act if presented with circumstantial evidence that shows access to information similar to the trade secret at issue.

**2. The District Court Erred in Determining That USA Power Had Not Shown an Issue of Material Fact Concerning Misappropriation**

¶ 51 Having established the appropriate standard, we now discuss whether the district court erred when it held that USA Power failed to raise a genuine issue of material fact as to misappropriation of its alleged trade secrets by PacifiCorp. The district court held that USA Power had "not provided any evidence, direct or circumstantial, that specifically identifies any trade secrets that were used or misappropriated by PacifiCorp."

¶ 52 The parties vigorously dispute the inferences to be made from both the direct and circumstantial evidence presented. PacifiCorp argues that any similarities between Spring Canyon and Currant Creek are commonly found in the industry. USA Power argues that the similarities are identical to unique features that USA Power incorporated into Spring Canyon based on the particular characteristics of the Mona site. Because USA Power has presented evidence that PacifiCorp had access to its alleged trade secret in the three binders and that Currant Creek is substantially similar to Spring Canyon, we

---

9. Some of these cases hold that upon presenting circumstantial evidence of access and similarity, the burden then shifts to the defendant to show that it *did not* misappropriate the trade secret. To the extent we cite these cases as supporting

the admission of circumstantial evidence, we decline to adopt a rule that would shift to PacifiCorp the burden of proving that it did not misappropriate USA Power's alleged trade secret.

hold that a jury could reasonably infer that PacifiCorp misappropriated USA Power's alleged trade secret when it built Currant Creek. The district court therefore erred when it granted summary judgment to PacifiCorp on the basis that USA Power had not raised an issue of material fact concerning misappropriation.

## III. THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO PACIFICORP ON USA POWER'S BREACH OF CONTRACT CLAIM

¶ 53 The district court granted summary judgment to PacifiCorp on USA Power's breach of contract claim. The court held that USA Power failed to present any evidence that PacifiCorp used the confidential information in a manner that breached the Confidentiality and Non–Disclosure Agreement. USA Power argues this was error because it presented evidence from which a jury could reasonably infer that PacifiCorp used the confidential information in a way that violated the Confidentiality Agreement.

¶ 54 Paragraph 3 of the Confidentiality Agreement states,

*Definition of "Confidential Information."* As used in this Agreement, "Confidential Information" means all information that is identified as confidential or proprietary when furnished to Receiving Party or its Representatives by Disclosing Party that concerns the Potential Transaction, Disclosing Party, its partners or co-venturers, affiliates, or subsidiaries, and that is either confidential, proprietary, or otherwise not publicly available. Any information furnished to Receiving Party or its Representatives by a director, officer, employee, stockholder, partner, co-venturer, consultant, agent, or representative of Disclosing Party will be deemed furnished by Disclosing Party for the purpose of this Agreement. Notwithstanding the foregoing, the following does not constitute Confidential Information for purposes of this Agreement: (i) information that is or becomes publicly available other than as a result of a disclosure by Receiving Party or its Representatives; (ii) information that was already known to Receiving Party on a non-confidential basis prior to being furnished to Receiving Party by Disclosing Party; (iii) information that becomes available to Receiving Party on a non-confidential basis from a source other than Disclosing Party or a representative of Disclosing Party if such source, to Receiving Party's knowledge, is neither subject to any prohibition against transmitting the information to Receiving Party nor bound by a confidentiality agreement with Disclosing Party; and (iv) information that is independently developed by Receiving Party or its Representatives without use of or reference to Confidential Information.

¶ 55 We note at the outset that misappropriation of trade secrets and breach of a confidentiality agreement are two separate and distinct claims. A confidentiality agreement, however, may serve as evidence that the parties expected confidentiality and that, therefore, use of the trade secret constitutes misappropriation. *See Nilssen v. Motorola, Inc.,* 963 F.Supp. 664, 680 (N.D.Ill.1997) ("Thus a contract that defines the degree of confidentiality among the parties also serves to establish—and to define—the duty of confidentiality required to underpin [a Uniform Trade Secrets Act] claim."). In this case, the district court did not analyze to what extent dismissal of the misappropriation claim affected the viability of USA Power's breach of confidentiality claim. Instead, the district court determined that USA Power had not presented sufficient evidence that PacifiCorp used the confidential information. We disagree.

¶ 56 A claim for breach of a confidentiality agreement presents the same evidentiary challenges as a misappropriation claim; the parties cannot always present direct evidence of use. To survive summary judgment, the plaintiff must present facts that show a dispute exists over whether the contract was breached, or in other words, whether the defendant used confidential information in violation of the agreement.

¶ 57 PacifiCorp's statement of undisputed facts, as deemed admitted by the district court, stated that Currant Creek resembled the Apex I plan and that Shaw/Stone &

Webster developed the plans in a short amount of time because the elements of the plant were well known. The facts deemed admitted by the district court also do not dispute that Shaw/Stone & Webster began work on the project in April 2003 and submitted the cost data to PacifiCorp in June 2003.

¶ 58 USA Power argues that the inferences to be made from the undisputed facts—such as the similarities between Spring Canyon and Currant Creek, the development of Currant Creek after disclosure of the confidential three binders, Shaw's astonishing efficiency in preparing a Currant Creek development plan, and the short length of time in which PacifiCorp developed Currant Creek—created an issue of material fact as to whether PacifiCorp impermissibly used the confidential information under the terms of the Confidentiality Agreement. We agree with USA Power.

¶ 59 The inferences to be made from the undisputed facts create an issue of material fact such that a reasonable jury could find that PacifiCorp more likely than not used the information presented by USA Power in breach of the confidentiality agreement. The district court therefore erred when it granted summary judgment to PacifiCorp on USA Power's breach of contract claim.

## IV. THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO MS. WILLIAMS/ HRO ON USA POWER'S BREACH OF FIDUCIARY DUTY CLAIMS

¶ 60 Ms. Williams moved for partial summary judgment on USA Power's claims of breach of fiduciary duty of confidentiality and breach of fiduciary duty of loyalty. The district court granted summary judgment to Ms. Williams on each claim.

¶ 61 The elements of a claim against an attorney for breach of a fiduciary duty are " '(1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client.' " *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 23, 194 P.3d 931

(quoting *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct.App.1996)). We address the district court's grant of summary judgment, addressing each claim in turn.

*A. The District Court Erred When It Granted Summary Judgment to Ms. Williams on USA Power's Breach of the Duty of Confidentiality Claim*

¶ 62 The district court acknowledged that "there are genuine issues of material fact concerning the scope of the information acquired by Ms. Williams," and that "it is unclear whether this information was truly confidential or generally known" or if it "was indeed virtually identical to the information previously provided to PacifiCorp by the plaintiffs themselves." Notwithstanding these acknowledged disputes, the district court granted summary judgment on the claim because USA Power had not "presented actual evidence that [Ms. Williams] communicated [USA Power's] confidential information to PacifiCorp." The court concluded that "simultaneous representation ... without more, is not sufficient alone to support an inference that an attorney has improperly used and/or disclosed confidential information."

¶ 63 USA Power argues that it did present direct evidence of disclosure. In the alternative, USA Power also argues that the district court erred in its statement of the law governing a lawyer's duty of confidentiality. It argues that the district court erred when it required direct evidence of disclosure because either (1) presentation of circumstantial evidence of disclosure is enough to survive summary judgment or (2) simultaneous representation alone creates a presumption, or at least an inference, of disclosure.

¶ 64 We begin with a discussion of the type of evidence, or the necessary degree of proof of disclosure, that USA Power needed to present to survive summary judgment. At the outset, we reject a rule that would create a presumption of disclosure or misuse simply based on a lawyer's simultaneous adverse representation of two parties because a presumption would prevent a fact-finder

from weighing the facts.[10]  *Davis v. Provo City Corp.*, 2008 UT 59, ¶ 20, 193 P.3d 86 ("A presumption requires the trier of fact, in the absence of evidence . . . on that question, to assume the existence of an ultimate fact from underlying basic facts." (alteration in original) (internal quotation marks omitted)). Such a result would undermine the intensely factual nature of a breach of confidentiality claim. It would also require the defendant to prove a negative, that it did not disclose confidential information, an unenviable task. We have noted the danger of requiring a party to prove negative evidence, recognizing that

> [i]f the law were otherwise, anyone could allege that he ate a mouse which was in a can of pork and beans, and while he might or might not be able to recover on the trial of the action against the canner and distributor of the food, he could win on a motion for summary judgment simply because there could not be a counter affidavit filed saying that there was no mouse in the can.

*Fox v. Allstate Ins. Co.*, 22 Utah 2d 383, 453 P.2d 701, 704 (1969). The district court therefore did not err in declining to recognize such a presumption.

¶ 65 USA Power next argues that simultaneous adverse representation supports a sufficient inference of disclosure to create a genuine issue of material fact. The Utah Court of Appeals recently held that a plaintiff must "present nonspeculative or nonconjectural evidence" that the defendant attorney used or disclosed plaintiff's confidential information. *Shaw Res. Ltd., L.L.C. v. Pruitt, Gushee & Bachtell, P.C.*, 2006 UT App 313, ¶ 29, 41 142 P.3d 560. While we believe the court of appeals' reasoning in *Shaw Resources* is sound, we note that at the summary judgment stage of a case, the question is whether a genuine issue of material fact remains, construing all facts and inferences made therefrom in favor of the nonmoving party. Thus, presentation of circumstantial evidence may create a genuine issue of material fact foreclosing summary judgment. *See Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 651 (10th Cir.2008) ("[W]e agree that circumstantial evidence can suffice to defeat summary judgment in appropriate circumstances; of course a plaintiff is not required to prove his or her case by direct proof alone."). As in circumstances of misappropriation, it may be difficult for a plaintiff to produce direct evidence that his or her attorney disclosed or misused confidential information. We therefore hold that inferences drawn from circumstantial evidence, including inferences from simultaneous adverse representation, may create a genuine issue of material fact.

¶ 66 The district court required USA Power to present "actual evidence" that Ms. Williams disclosed USA Power's confidential information. A review of the facts considered by the district court reveals that the district court concluded as a matter of law that noncircumstantial evidence of disclosure was the "actual evidence" USA Power failed to produce. This was error. The district court should have looked to whether USA Power presented evidence, either direct or circumstantial, that created a material issue as to Ms. Williams' disclosure of confidential information. We therefore hold the district court erred when it granted summary judgment to Ms. Williams on USA Power's breach of the duty of confidentiality claim.

*B.  An Issue of Material Fact Remains Concerning Whether Any Possible Breach of the Fiduciary Duty of Loyalty Caused Harm to USA Power*

¶ 67 Ms. Williams also moved for partial summary judgment on USA Power's breach of fiduciary duty of loyalty claim. The district court noted that genuine issues of material fact remained "concerning the duration of [Ms. Williams'] representation of [USA Power], the scope of that representation and the scope of HRO's representation of PacifiCorp with respect to Currant Creek." Nevertheless, the court granted Ms. Williams partial summary judgment on the claim because USA Power had not pre-

---

**10.** We also note that a dispute still remains over whether Ms. Williams' representation of the two parties was in fact simultaneous.

sented evidence that "but for [Ms. Williams'] breach of its obligations, [USA Power] would have been benefitted."

¶ 68 We first note that the district court did not err when it determined that a breach of fiduciary duty of loyalty claim includes "but for" causation as an element. We are therefore left to analyze the sole question of whether the district court erred when it concluded that no genuine issue of material fact remained concerning causation. The district court determined that

> [t]he undisputed material facts establish that [Ms. Williams'] representation was not necessary for PacifiCorp to acquire water rights based upon the availability of equally capable water rights lawyers in Salt Lake City and PacifiCorp's budget commitment of $16.2 million for water rights in connection with the Currant Creek Power Plant ... [and that USA Power's] negotiations with PacifiCorp were terminated prior to PacifiCorp's acquisition of water rights for the Currant Creek project.

¶ 69 USA Power claims that it presented material issues of fact showing that Ms. Williams' dual representation caused PacifiCorp to withdraw its interest in purchasing Spring Canyon. USA Power argues that the facts and resulting inferences therefrom create a genuine issue of material fact as to whether absent Ms. Williams' representation of PacifiCorp, PacifiCorp either would not have reneged on its intent to purchase Spring Canyon or would not have been able to complete its competing Currant Creek project in time to award itself the RFP. Moreover, USA Power argues that because PacifiCorp had a short time to develop Currant Creek before the RFP bidding process closed, Ms. Williams was the only lawyer who could have successfully secured the necessary water rights precisely because she was familiar with water availability in Mona due to her prior representation of USA Power. Ms. Williams refutes any such inference and instead argues that (1) WW Ranches secured the water rights and (2) any other water attorney in Utah could have duplicated her services.

¶ 70 We conclude that an issue of material fact remains concerning causation. A rea-sonable inference can be made from the facts presented to the district court that Ms. Williams' prior representation of USA Power allowed PacifiCorp to designate Currant Creek as the next best alternative within RFP time constraints. The parties dispute whether Ms. Williams shared information about Spring Canyon to PacifiCorp and if she used the information obtained during her representation of USA Power to expedite PacifiCorp's decision to use WW Ranches instead of private individual share owners to obtain the needed water rights. PacifiCorp argues that even if it had not submitted Currant Creek as the next best alternative, USA Power's bid would not have been chosen as it came in fourth place. Conversely, USA Power argues its bid was second best to Currant Creek, and presented evidence to the district court that at least two of its bids came in second place. This is a genuine issue of material fact that relates directly to causation. Therefore, the district court erred in granting summary judgment on the issue.

## CONCLUSION

¶ 71 The district court held that the Spring Canyon "vision" could not constitute a trade secret as a matter of law and that, even so, USA Power had not shown misappropriation of the alleged trade secret. The district court also held that USA Power had not shown that Ms. Williams actually communicated confidential information to PacifiCorp or that any breach of fiduciary duty harmed USA Power. We reverse the district court and remand.

¶ 72 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.