**2015 UT App 52**

## THE UTAH COURT OF APPEALS

ZAGG, INC.,
Petitioner and Appellant,

*v.*

LORENCE A. HARMER; HARMER HOLDINGS, LLC; AND
TELEPORTALL, LLC,
Respondents and Appellees.

Opinion
No. 20130586-CA
Filed February 26, 2015

Third District Court, Salt Lake Department
The Honorable Ryan M. Harris
No. 110917687

David L. Arrington, Peter H. Donaldson,
and David W. Tufts, Attorneys for Appellant

Marcus R. Mumford and Joshua S. Ostler,
Attorneys for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES JAMES Z. DAVIS and STEPHEN L. ROTH concurred.

CHRISTIANSEN, Judge:

¶1      Zagg, Inc. appeals from the district court's interlocutory
order denying its request for an injunction to prevent Lorence A.
Harmer from selling shares of Zagg stock under the terms of a
settlement agreement between the parties. We reverse that order
and remand the matter to the district court for further proceedings.

BACKGROUND

¶2      Harmer is a former director of Zagg. Upon resigning from the board of directors, he and Zagg entered into a settlement agreement to resolve a dispute between them.[1] Under the terms of this agreement, Harmer agreed to execute a promissory note in favor of Zagg. The agreement also provided that Harmer could not sell approximately 80,000 of his shares of Zagg stock (the Encumbered Shares) until two months after the promissory note was paid in full.

¶3      Harmer made no payments on the note and instead filed suit seeking, among other things, a declaratory judgment that Zagg had breached the settlement agreement and that Harmer was excused from performing under the agreement. During the course of the litigation, Harmer sought to sell the Encumbered Shares, and Zagg moved the district court for a temporary injunction to prevent Harmer from doing so pending the resolution of the parties' claims. The district court denied Zagg's request for an injunction, concluding that "the threatened harm to [Zagg] is quantifiable in money damages and is therefore not irreparable." Zagg petitioned for permission to appeal from the district court's interlocutory order, and this court granted the petition.

ISSUE AND STANDARD OF REVIEW

¶4      The sole issue on appeal is whether the district court abused its discretion in denying Zagg's request for a preliminary injunction. We will not disturb a district court's denial of a preliminary injunction "'unless the court abused its discretion or rendered a decision clearly against the weight of the evidence.'" *Miller v. Martineau & Co.*, 1999 UT App 216, ¶ 26, 983 P.2d 1107 (quoting *Aquagen Int'l, Inc. v. Calrae Trust*, 972 P.2d 411, 412 (Utah 1998)).

---

1. Harmer signed the settlement agreement and promissory note on behalf of himself; Harmer Holdings, LLC; and Teleportall, LLC.

ANALYSIS

¶5     Generally, a district court may issue a preliminary injunction only if the applicant establishes four elements: (1) "[t]he applicant will suffer irreparable harm unless the order or injunction issues"; (2) "[t]he threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause to the party restrained or enjoined"; (3) "[t]he order or injunction, if issued, would not be adverse to the public interest"; and (4) "[t]here is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation." Utah R. Civ. P. 65A(e). The principal question here is whether the district court erred in denying Zagg's request for an injunction on the basis that Zagg failed to show irreparable harm.[2]

¶6     Zagg argues that the district court erred in concluding that Zagg would not be irreparably harmed by the sale of the Encumbered Shares, because the contractual prohibition on the sale of the shares constitutes "important bargained-for leverage that cannot be valued by any precise standard or adequately compensated by money damages." Generally, irreparable harm is "that which cannot be adequately compensated in damages or for which damages cannot be compensable in money"—in other words, harm from which the injured party cannot be made whole by monetary compensation. *See Hunsaker v. Kersh*, 1999 UT 106, ¶ 9, 991 P.2d 67 (emphasis omitted) (citation and internal quotation marks omitted). Thus, an injunction may be appropriate to prevent harms that "occasion damages that are estimated only by conjecture, and not by any accurate standard." *Id.* (citation and internal quotation marks omitted).

---

2. The district court expressly determined that Zagg had presented "serious issues on the merits which should be the subject of further litigation." *See* Utah R. Civ. P. 65A(e)(4). However, because it concluded that Zagg had failed to demonstrate irreparable harm, the court did not address the other two elements of Zagg's request for a preliminary injunction.

¶7     Zagg characterizes the prohibition on the sale of the Encumbered Shares as "valuable, bargained-for contractual leverage incentivizing Harmer to . . . pay the Note" and argues that if Harmer is allowed to sell the shares, Zagg will be permanently deprived of its ability to assert this leverage against Harmer. However, in denying the injunction, the district court stated, "I just don't think we're in a situation where we're talking really about anything other than money at the end of the day." The court explained its view that the prohibition on the sale of the Encumbered Shares was not an "intangible right" but rather implicated only Zagg's "ability to get paid at the end of the day." The court therefore concluded that Zagg's loss of its ability to enforce the prohibition did not constitute irreparable harm.

¶8     We determine that the district court's narrow focus on whether Zagg would ultimately be able to collect on the note overlooked the value to Zagg of this bargained-for leverage in its ongoing dispute with Harmer. Injunctive relief is fundamentally preventive in nature, and an injunction serves to "preserve the status quo pending the outcome of the case." *Hunsaker*, 1999 UT 106, ¶ 8 (citation and internal quotation marks omitted). While there is no Utah authority squarely on point with this issue, courts in other jurisdictions have recognized that injunctive relief is appropriate to preserve the relative leverage and negotiating positions of the parties in an ongoing dispute. *See, e.g., Brady v. National Football League*, 640 F.3d 785, 792–93 (8th Cir. 2011) (per curiam); *Trilogy Portfolio Co. v. Brookfield Real Estate Fin. Partners, LLC*, No. CIV.A. 7161-VCP, 2012 WL 120201, at *7 (Del. Ch. Jan. 13, 2012). And a contractual covenant that allows one party to restrict the other's ability to liquidate assets or access money creates leverage and "provides a 'material commercial advantage' to the party that can invoke it." *See NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC,* 922 A.2d 417, 438 (Del. Ch. 2007) (quoting *Boesky v. CX Partners, LP*, CIV. A. Nos. 9739, 9744, 9748, 1988 WL 42250, at *14–15 (Del. Ch. Apr. 28, 1988)).

¶9     In *Brady v. National Football League,* the Eighth Circuit Court of Appeals considered whether the National Football League

would be irreparably harmed if an injunction prohibiting its exercise of a player "lockout" was not stayed pending appeal.[3] 640 F.3d 785, 793 (8th Cir. 2011) (per curiam). During the lockout, the players could not play or practice with their teams or receive any compensation from their teams. *Id.* at 788. The district court enjoined the NFL from enforcing the lockout, and the NFL requested a stay of that injunction pending appeal of the district court's decision. *Id.* at 787. The NFL contended that its inability to utilize a lockout to prevent the players from continuing to play and be paid would deprive it of leverage in its dispute with the players and compromise its negotiating position. *Id.* at 793. The circuit court agreed, concluding that the NFL had shown "some degree of irreparable harm" from the loss of its advantaged negotiating position, and granted the stay. *Id.* at 793–94.

¶10 Like the NFL's ability to block the players from playing with and being paid by their teams during an ongoing labor dispute, Zagg has bargained for the ability to block Harmer from selling the Encumbered Shares while the promissory note is in default, placing Zagg in an advantaged negotiating position in resolving the current dispute. Harmer argues that this case is distinguishable from *Brady* and similar cases upon which Zagg relies, asserting that Zagg "will not lose any 'leverage' because there are no ongoing negotiations—there is only a contract dispute where [Harmer has] asserted claims, and [Zagg] has asserted counterclaims." Harmer argues, essentially, that Zagg has no leverage to lose because "the parties' negotiations concluded with the signing of the Settlement Agreement." However, as Harmer recognizes, this litigation itself is an ongoing dispute between the parties and is thus a potential ground for further negotiation and settlement. The leverage Zagg obtained in the original settlement agreement remains valuable and

---

3. The grounds to obtain a stay pending appeal under rule 8(a) of the Federal Rules of Appellate Procedure are substantively similar to those enumerated for issuance of a preliminary injunction under rule 65A of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 65A(e); *Brady v. National Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (per curiam).

"provides a material commercial advantage" to Zagg. *See NAMA Holdings*, 922 A.2d at 438 (citation and internal quotation marks omitted).

¶11 We are also persuaded by the reasoning expressed in *Boesky v. CX Partners, LP*, CIV. A. Nos. 9739, 9744, 9748, 1988 WL 42250 (Del. Ch. Apr. 28, 1988). There, the Delaware Court of Chancery considered whether a partner and creditor of a partnership would be irreparably harmed if the partnership breached a covenant in the partnership agreement prohibiting the payment of distributions while the notes held by the creditor-partner were in default. *Id.* at *14. The partnership argued that because the planned distribution left adequate assets in the partnership to satisfy the notes, the creditor-partner could bring a breach-of-contract claim to recover the amount due under the notes, and therefore had an adequate remedy at law. *Id.*

¶12 The *Boesky* court rejected the partnership's argument, explaining that the partnership failed to "appreciate the distinctive nature of [the] covenant restricting distributions . . . when an obligation to pay money is in default." *Id.* The court observed that such a covenant has at least two purposes: "First, it retains assets within the debtor in order to make ultimate recovery by the party protected by the covenant more likely." *Id.* The court recognized that where a creditor can be assured that funds adequate to discharge the debt will remain available, injunctive relief is not necessary on that basis. *See id.* However, the court determined that "[t]he negotiation of such a covenant inevitably involves a second bargained-for benefit":

> That is leverage. Obviously, the holder of a defaulted note is in a stronger position vis-a-vis the maker of the note if, by reason of the default, he is empowered to prevent distributions of earnings to the owners of the firm, whether they are stockholders or partners. Such a power can be of material commercial advantage. When it is bargained for, as it was in

connection with the issuance and placement of the [subject notes], it cannot fairly be ignored by a court.

*Id.* The court explained that to deny injunctive relief because the creditor may ultimately recover the value of the debt at some future time "would essentially involve the judicial nullification of the leverage-conferring aspects of such a provision." *Id.* The court further determined that "no money damage award could reliably be calculated to compensate [the creditor-partner] for the loss of bargained-for leverage that it would suffer" and that injunctive relief was therefore appropriate to prohibit the distribution. *Id.* at 15.

¶13    We conclude that the contractual provision at issue here confers on Zagg essentially the same type of leverage as was at issue in *Boesky*. By virtue of Harmer's default on the promissory note, Zagg is empowered to prevent Harmer from selling the Encumbered Shares and receiving their cash value. And while Zagg may ultimately be able to obtain a judgment against Harmer for the value of the note, to deny injunctive relief on that basis would be to ignore the leverage conferred by this provision of the settlement agreement. We also conclude that no award of money damages could be reliably calculated to compensate Zagg for the loss of this leverage if Harmer were allowed to sell the Encumbered Shares.[4] Accordingly, we conclude that the district court erred in determining that Zagg would not be irreparably harmed if the

---

4. Harmer also contends that an appropriate measure of damages can be calculated because Zagg "can bring suit for breach of contract and recover the readily-ascertained monetary value of the stock shares" if Harmer is eventually found in breach of the agreement. However, even if we assume that Zagg would be entitled to the value of the Encumbered Shares as a remedy for breach of the no-sale provision, this approach would fail to compensate Zagg for the loss of the leverage-conferring aspect of the provision. *See Boesky v. CX Partners, LP*, CIV. A. Nos. 9739, 9744, 9748, 1988 WL 42250, at *14 (Del. Ch. Apr. 28, 1988).

court did not enjoin Harmer from selling the Encumbered Shares and that the district court exceeded its discretion in denying the injunction on this basis. *Water & Energy Sys. Tech., Inc. v. Keil*, 1999 UT 16, ¶ 6, 974 P.2d 821. We therefore reverse the district court's order denying Zagg's request for an injunction.[5]

CONCLUSION

¶14    The district court erred in concluding that Zagg would not be irreparably harmed if Harmer were allowed to sell the Encumbered Shares. We therefore conclude that the district court abused its discretion in denying Zagg's request for a preliminary injunction on this basis, and we reverse the district court's order. We remand the matter to the district court to consider the remaining factors enumerated in rule 65A and determine if an injunction should issue.

———

5. Harmer urges this court to affirm on the alternative ground that the parties modified the terms of the settlement agreement by their subsequent acts and that Zagg therefore no longer has an enforceable right to prevent the sale of the Encumbered Shares. "In the limited circumstance that an appellate court chooses to affirm on an alternate ground, it may do so only where the alternate ground is apparent on the record." *Bailey v. Bayles*, 2002 UT 58, ¶ 20, 52 P.3d 1158. The factual and legal basis of this argument properly remains the subject of litigation below. We therefore decline to affirm on this alternative ground.