Justice DURHAM,
dissenting:
1 65 I respectfully dissent from the majority opinion. I would affirm summary judgment against InnoSys on all claims. InnoSys failed to create a dispute of material fact that would preclude summary judgment on both its damages claims and its claims for injune-tive relief.
I. SUMMARY JUDGMENT ON INNO-SYSS DAMAGES CLAIMS FOR MIS- - APPROPRIATION OF TRADE SECRETS AND FOR BREACH OF CONTRACT
1 66 It is well established in Utah that to overcome a motion for summary judgment on a claim for which damages is an element, the plaintiff must show evidence of damages. Borghetti v. Sys. & Comput. Tech Inc., 2008 UT 77, ¶ 31, 199 P.3d 907 ("[In order to overcome summary judgment [plaintiff] must come forward with admissible 'evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages'"). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.... In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Brown v. Div. of Water Rights of the Dep't of Nat. Res., 2010 UT 14, ¶ 14, 228 P.3d 747 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
167 Damages constitute a necessary element of a contract claim. Bair v. Axiom Design, LLC., 2001 UT 20, ¶ 14, 20 P.3d 388. If, by the summary judgment stage, a plaintiff has made no showing of damages on a contract claim, there is no reason to proceed to trial because the plaintiff has not presented evidence on which a jury could find that it is entitled to relief, See Giusti v. Sterling Wentworth Corp., 2009 UT 2, ¶ 52, 201 P.3d 966.
T68 Actual damages is also a necessary element of a damages claim under the Uniform Trade Seerets Act (UTSA). The UTSA provides for three specific forms of damages: compensation for actual loss, disgorgement of unjust enrichment, and reasonable royalties. Urax Cop® § 183-24-4(1). Where a statute provides for a particular amount or form of damages, "[alny expansion of the damages that may be recovered must be undertaken by the legislature, not the courts." Adkins v. Uncle Bart's, Inc., 2000 UT 14, ¶ 40, 1 P.3d 528; see also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19, 100 *1029 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("[Ilt is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). Federal and state courts have unanimously interpreted the UTSA's list of forms of damages to be exclusive and have therefore required plaintiffs to show evidence of damages in one of these categories.[1]
" 69 InnoSys produced no evidence of any damages caused by Ms, Mercer's breach of the NDA or misappropriation of trade secrets. According to the evidence produced by InnoSys, Ms. Mercer kept work emails after she was terminated. She also failed to return a business plan that her supervisor instructed her to review shortly before she was fired. She then used some of the emails in an administrative unemployment benefits hearing to defend herself from InnoSys's assertion that she was fired for incompetence. After Ms. Mercer learned that InnoSys was displeased that she still possessed work emails and the business plan, she deleted them. InnoSys produced no evidence that Ms. Mercer ever used or disclosed the doeu-ments in any way that harmed InnoSys or unjustly enriched herself, Absent any evidence of actual loss, unjust enrichment, or a basis for an award of reasonable royalties, summary judgment as to InnoSys's damages claims was not error. See Carbo Ceramics, Inc. v. Keefe, 166 Fed.Appx. 714, 725 (5th Cir.2006) (affirming summary judgment because the plaintiff "failed to meet its burden of presenting sufficient evidence demonstrating a triable issue of material fact as to actual damages recoverable under its trade secret misappropriation claim"); Firetrace USA, LLC v. Jesclard, 800 F.Supp.2d 1042, 1054 (D.Ariz.2010) (granting summary judgment in a misappropriation and breach-of-contract case against a former employee because "[pllaintiffs hald] not met their burden to overcome summary judgment by showing evidence they were proximately damaged by [defendant's] use of confidential information"); U.S. Gypsum Co. v. LaFarge N. Am., Inc., 508 F.Supp.2d 601, 639-41 (N.D.Ill. 2007) (dismissing contract-based breach-of-confidentiality claims against a former employee because the former employer made no showing of damages).
170 At minimum, therefore, Ms, Mercer is entitled to partial summary judgment in her favor on InnoSys's claims for damages.
II, SUMMARY JUDGMENT ON INNO-SYSS INJUNCTIVE RELIEF CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS AND FOR BREACH OF CONTRACT -
171 In addition to damages, InnoSys sought injunctive relief for its misappropria *1030 tion of trade secrets and breach of contract claims. An injunction does not-require proof of actual damages; a court may grant equitable injunctive relief upon a showing of threatened future harm. Sys. Concepts, Inc. v. Dizon, 669 P.2d 421, 428 (Utah 1983). The majority opinion bases its reversal of summary judgment upon its conclusion that even if there is no evidence of actual damages or unjust enrichment, there is a dispute of fact as to whether there is a threat of future harm that could justify injunctive relief, I disagree.
A. - The Presumption of Irreparable Harm
172 One of the necessary elements of a claim for injunctive relief is proof of itrepara-ble harm. See Uras R. Civ. P. 65A¥(e) (a preliminary "injunction requires a showing that "[the applicant will suffer irreparable harm unless the order or injunction issues"). "Irreparable injury justifying an injunction is that which cannot be adequately compensated in damages or for which damages cannot be compensable in money." Hunsaker v. Kersh, 1999 UT 106, ¶ 9, 991 P.2d 67 (internal quotation marks omitted). "It is thus well-established that, an injury is irreparable only if it cannot be undone through monetary remedies." Dennis Melancon, Inc. v. City of New Orleans, 703 F.3d 262, 279 (5th Cir.2012) (internal quotation marks omitted).
T73 Several jurisdictions have adopted a presumption that the disclosure of a trade secret constitutes an irreparable harm that justifies an injunction. The presumption of irreparable harm is based upon the fact that the disclosure of a trade secret has the potential to. destroy the legal protections afforded to a trade secret if it becomes generally known. See 4 Rosmrt M. Mincrim & Eric E. Bensen, Minazrim on Traps § 15.02[1][c] (20183) (noting that "unprotected disclosure of a trade secret destroys the secret"). Because "of the difficulties involved in valuing the consequences of the destruction of a trade secret," id., some courts have adopted a presumption that the harm associated with an unauthorized disclosure is irreparable, see FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir.1984) (holding that "the loss of trade secrets cannot be measured in money damages"); Kendall Holdings, Ltd. v. Eden Cryogenics LLC, 630 F.Supp.2d 853, 867 (S.D.Ohio 2008) (holding that "[the logs of trade secrets is usually considered an irreparable harm [that] cannot be measured in money damages" (alterations in original) (internal quotation marks omitted)), Thus, onee the risk of future disclosure has been established, courts have presumed that the harm caused by the disclosure would be irreparable, justifying injunctive relief. ‘
T74 But we need not decide whether to espouse this judicially created presumption because it does not apply here. The key issue in this case is not whether an unprotected disclosure of InnoSys's trade secrets would produce an irreparable harm that could not be readily measured in money damages, - Rather, the question presented is whether InnoSys produced evidence of a threatened future disclosure of InnoSys's files. Infra ¶ ¶ 79-86.
T75 The majority, however, adopts a broader interpretation of the judicially created presumption that the harm occasioned by an unauthorized disclosure of a trade secret is irreparable-Le., not easily remedied by money damages. 'The majority opinion holds that there is "a presumption of harm upon proof of misappropriation." - Supra 134. Thus the majority appears to endorse the proposition that when a plaintiff seeks an injunction in a case involving trade secrets, there is a presumption of a threat of future harm rather than merely a presumption that any harm would be irreparable. -
T76 The majority's broad interpretation of the presumption of irreparable harm, however, is not supported by the reasoning that produced the presumption in the first place. The unauthorized disclosure of a trade secret has been presumed to lead to irreparable harm because of the difficulty of assigning a monetary value to the loss of the secret,. The presumption of irreparable harm is not based upon an assumption that a plaintiff's allegations of threatened future use or disclosure are particularly trustworthy, - shifting the burden of proof on this issue. See Water & Energy Sys. Tech., Inc. v. Keil, 1999 UT 16, ¶ ¶ 8, 14, 974 P.2d 821 (party seeking an *1031 injunction for misappropriation of trade secrets bears the burden of proof; Amylin Pharm. Inc. v. Eli Lilly & Co., No. 11-CV-1061 JLS NLS, 2011 WL 5287558, at *2 (S.D.Cal. June 8, 2011) (rejecting as speculative a plaintiff's assertion that the defendant would misuse confidential information at a future date), aff'd, 456 Fed.Appx. 676 (9th Cir.2011). Indeed, the leading commentator on trade secrets has. noted that the presumption of irreparable harm is not a presumption: that harm. will occur; "[Clourts have often ruled that a trade secret claimant is entitled to a rebuttable presumption of irreparable harm for the purposes of injunctive relief, at least where there is a threat of disclosure of the trade secret" 4 RosErt M. .M:LGrM & Eric E. Bensen, Mmoniv on TRap® § 15.02[1][e] (2018) (emphasis added) (footnote omitted).
T77 The Second Circuit has afﬁrmed that absent evidence of a risk of prospective disclosure, a presumption. of irreparable harm simply would not arise:
We have previously observed that the loss of trade secrets cannot be measured. in money damages where that secret, once lost, is lost forever. Some courts in this Circuit have read this passing observation to mean that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. 'That reading is not correct. A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will diss seminate those secrets to a wider audience or otherwise irreparably unpalr the value of those secrets.
Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir.2009) (internal quotation marks omitted). The presumption of irreparable harm does not apply, however, where there is not a risk of "further dissemination or irreparable impairment of value." Id. Thus the Second Cireuit directly rejected the proposition that the presumption applies in the absence of a showing of future harm through unauthorized disclosure. See also Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92-93 (3d Cir.1992) (rejecting a plaintiffs argument that "irreparable harm must be presumed where , . . the elements of a trade secret claim have been satisfied" and refusing to apply the presumption where the plaintiff did not show that the defendant intended to use or disclose the trade secret).
T 78 Therefore, the presumption of irreparable harm does not apply to the threshold question of whether InnoSys , has produced evidence of a threat of future i injury through unauthorized disclosure of its trade secrets. The issué in this case is not whether a future harm is irreparable because it cannot be remedied through money damages, but rather whether there is evidence of a threat of future harm at all, I turn now to that ques-t1on
B. - No Evidence of Threatened Horm
T79 In addition to actual damages, Inno-Sys sought injunctive relief, But "[the fact the relief sought is injunctive does not excuse a showing of injury, whether actual or threatened." Intel Corp. v. Hamidi, 30 Cal.4th 1342, 1 Cal.Rptr.3d 32, 71 P.3d 296, 303 (2008) (alteration in original) (internal quotation marks omitted). In Utah, a party seeking a permanent injunction must show that "irreparable harm would result" without the injunction. Johnson v. Hermes Assocs., Ltd., 2005 UT 82, ¶ 13, 128 P.3d 1151 (emphasis added) (listing the requirements for a permanent injunction); 42 Am. Jur. 2d Injunctions § 83 (2010) ("An injunction will not be granted to restrain acts, however irregular or unauthorized, that do not injure the complainant.") The threatened injury must be "a real and immediate injury, not an Abstract injury or one that is conjectural or hypothetical." : Ramos-Santos v. Hernandez-Nogueras, 867 F.Supp.2d 235, 260 (D.P.R.2012). A court will not exercise its power to grant injunctive. relief "to allay a mere apprehension of injury at an indefinite future time." 42 Am. Jur. 2d Injunctions § 84 (2010); accord United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (injunetion requires a determination "that there exists:some cognizable danger of recurrent violation, something more than [a] mere possibility").
*1032 80 If the evidence presented by a plaintiff seeking injunctive relief "is insufficient to justify issuance of a permanent injunction, the trial court simply hals] no discretion to exercise," -and summary judgment is proper. DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc., 176 Cal.App.4th 697, 97 Cal.Rptr.3d 856, 876 (2009) (Internal quotation marks omitted); Shaw v. Tampa Elec. Co., 949 So.2d 1066, 1070 (Fla.Ct.App.2007) (holding that a court may deny a request for injunctive relief in a summary judgment proceeding if it is clear the plaintiff cannot meet the requirements for an injunction).
81 InnoSys did not present evidence of a threatened disclosure of its trade secrets that would cause it harm. InnoSys argued below that Ms. Mercer's retention of emails and other electronic documents after she was terminated created a threat of future harm that justified an injunction against her, Ms. Mercer presented evidence that she no longer had gecess to InnoSys's documents because she deleted them. Inno§ys agrees that Ms. Mercer deleted the files from her Gmail account and the thumb drive-indeed, it brought a spoliation claim based upon the deletions. Furthermore, InnoSys's forensic analysis of Ms. Mercer's computers, thumb drive, and Gmail account confirmed that she no longer had the electronic documents. But InnoSys contends that Ms. Mercer's assertions that she did not forward the files to another electronic storage device or email account prior to deletion may be false, and that she may have had the continuing ability to disclose or use InnoSys's documents in the future. Thus, the propriety of summary judgment on the injunctive relief claim hinges upon whether a dispute of material fact existed as to Ms. Mercer's continued possession of InnoSys's documents.
€82 The party opposing summary judgment "may not rest upon the mere allegations or denials of the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial" Uran R. Civ. P. 56(e) If the opposing party fails to produce specific evi-denee creating a dispute of material fact, summary judgment shall be entered. Id.; Johnson, 2005 UT 82, ¶ 21, 128 P.3d 1151 (affirming summary judgment on injunction claim where the opposing party "failed to contest [the moving party's evidence] with specific sworn evidence as required under rule 56(e)"). © '
183 Here,. InnoSys did not produce any evidence that Ms. Mercer had retained electronic. files containing InnoSys's trade secrets. Before this litigation began, Ms. Mercer sent a letter to InnoSys asserting she did not copy or transfer InnoSys emails prior to deleting them. In her depositions, she affirmed that she no longer had access to the emails or the business plan because she permanently deleted them. And forensic seruti-ny of Ms. Mercer's email account and electronic storage devices yielded no evidence that relevant files had been copied prior to deletion. In short, InnoSys produced no evidence indicating that Ms. Mercer secretly retained copies of InnoSys's files. It merely speculates that Ms. Mercer may still have access to the files. See Titaness Light Shop, LLC v. Sunlight Supply, Inc., 585 Fed.Appx. 390, 391 (9th Cir.2014) ("To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough.").
184 Absent evidence supporting a conclusion that Ms. Mercer retained the ability to use or disseminate the InnoSys files, summary judgment was appropriate because In-noSys's allegations that Ms. Mercer posed a potential future risk to the company and its trade secrets are too "remote and speculative" to merit an injunction. Almurbati v. Bush, 366 F.Supp.2d 72, 78 (D.D.C.2005); Johnson, 2005 UT 82, ¶ 13, 128 P.3d 1151 (requiring parties seeking injunctions to show that harm "would" result from the absence of an injunction); see also Am. Airlines, Inc. v. Imhof, 620 F.Supp.2d 574, 580 (S.D.N.Y.2009) (where a former employee offered to delete or return all copies of doeun-ments and computer files he had taken from his former employer, injunctive relief was not warranted because the former employer "failed to establish the requisite threat of irreparable injury in respect of the copied documents").
*1033 C. - Preservation
«[ 85 The majority asserts that because Ms. Mercer did not specifically argue below that InnoSys's injunctive relief claims failed because it did not produce evidence of a threatened future harm of unauthorized disclosure, this issue was not preserved and should not be considered by this court. Supra TT 40-41. But this argument ignores our well-established rule that the preservation rule does not apply to arguments for the affir-mance of a judgment below:
The appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court.
Blaisdell v. Dentrix Dental Sys., Inc., 2012 UT 37, ¶ 5 n. 1, 284 P.3d 616 (emphasis added) (internal quotation marks omitted); accord Bailey v. Bayles, 2002 UT 58, ¶ 10, 52 P.3d 1158; Goodsel v. Dept of Bus, Regulation, 528 P.2d 1230, 1232 (Utah 1974).
1 86 At any rate, InnoSys raised the issue of whether evidence of a threatened harm precluded summary judgment as to the in-junetive relief claims. The issue of whether there was a dispute of fact regarding future harm, therefore, was preserved because it was presented to the district court for resolution. Gressman v. State, 2013 UT 63, ¶ 45, 323 P.3d 998 (an issue is preserved if one party presents it to the district court in a manner that gives the court the opportunity to rule on it).
D. Voluntary Reform
T87 Citing trademark caselaw, the majority also argues that Ms. Mercer's "voluntary reformation and cessation of unlawful activity" by deleting InnoSys's files does not necessarily defeat InnoSys's claim for injunctive relief. Supra ¶¶ 42-46. As the Supreme Court has noted, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct" W.T. Grant Co., 345 U.S. at 633, 73 S.Ct. 894. The principle that voluntary reformation does not necessarily defeat an injunctive relief claim makes sense in situations where a trademark infringer voluntarily stops the illegal activity after a lawsuit is filed, Where the only impediment to future harmful conduct is the defendant's self-imposed restraint, the likelihood of prospective infringement of an intellectual property right is a question of fact for the court. See id. (if the defendant discontinues the illegal conduct, the moving party must still show "that there exists some cognizable danger of recurrent violation"). ~
T88 This case, however, is fundamentally different from the voluntary reformation caselaw cited by the majority. Unlike the typical trademark infringer who ceases illegal activity but retains the capability to reini-tiate the harmful conduct in the future, Ms. Mercer undisputedly deleted InnoSys's emails and files, Thus, the future use or dissemination of the files is not just a matter of self-restraint. InnoSys has not produced evidence that Ms. Mercer retains the capacity to use its documents in the future. Absent evidence that she retained the ability to use or distribute the files, summary judgment was appropriate.[2]
189 The majority cites Supreme Court precedent for the proposition that " 'a defendant claiming that its voluntary compliance *1034 moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur'" Already, LLC v. Nike, Inc., - US. -, -, 133 S.Ct. 721, 727, 184 L.Ed.2d 553 (2013) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc, 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The majority concludes that under this precedent, "the burden shifts to Mercer to carry the "formidable burden of showing that it is absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur'" in order to av01d an injunction against her. Supra ¶ 43 (alteration in original); see also swore ¶ 43 n. 24 ("[The burden of proving reform has shifted to Mercer."). The majority also suggests that Ms. Mercer must satisfy this "'formidable burden' " in (order to prevaﬂ on remand. Supra ¶ 46 n. 25.
190 Already, LLC .and Friends of the Earth, however, do not shift the burden to a defendant to prove that an injunction should not issue. In both of these cases, the defendant claimed that a federal court had no Artlcle TII authority to adjudicate an injune-tive relief clalm because the defendant's actions had rendered the case or controversy moot. Already, LLC, 183 S.Ct. at 726-27; Friends of the Earth, 528 U.S. at 173-74, 120 S.Ct. 693. Thus, the Supreme Court's pronouncement that a defendant bears a "formidable burden” was made in the specific context of the defendant's argument that a federal court lacked the authority to even adjudicate the injunctive relief claim. Because Ms. Mercer never claimed that Inno-Sys's injunctive relief claims were moot or challenged the district court's authority to decide these claims, Already, LLC and Friends of the Earth do not apply here.
~ {91 Indeed, the Supreme Court has long recognized that although
the court's power to grant injunctive relief survives discontinuance of the illegal conduct,]. ... the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.
W.T. Grant Co., 345 U.S. at 633, 73 S.Ct. 894. Even though voluntary reformation does not divest the court of power to issue an injunetion, it also does not relieve the moving party of the burden of meeting the requirements of proving an injunction is required. As noted above, InnoSys has failed to meet this burden by creating a dispute of material fact regarding a threat of future harm. But even if the majority disagrees with my conclusion regarding the propriety of summary judgment on the injunctive relief claims, on remand, InnoSys still bears the burden of showing that the elements of a permanent injunctive relief claim have been satisfied in this case. Johnson, 2005 UT 82, ¶ 13, 128 P.3d 1151 (listing the requirements for a permanent injunction); Water & Energy Sys., 1999 UT 16, ¶ ¶ 8, 14, 974 P.2d 821 (party seeking an, "injunction heals the burden of proof).
~- E. - Inconsistent Testimony
T92 On appeal, Inno§Sys contends that summary judgment on the injunction claim was inappropriate because it alleges Ms. Mercer gave false sworn testimony during a hearing on her unemployment benefits claim. InnoSys notes that Ms. Mercer incorrectly stated in the unemployment benefits hearing that she obtained the business plan the day before she was terminated because her supervisor instructed her to review it. She later clarified in this litigation that she acquired the plan on the day of her termination, although before InnoSys fired her. Ms. Mercer also. testified in the unemployment benefits hearing that InnoSys's IT specialist gave her permission to transfer her work emails to her personal Gmail account. She then clarified in this litigation that she informed the IT specialist of her intention to forward the emails and he never told her not to do so.
193 The inconsistencies in Ms. Mercer's testimony are susceptible to an innocent explanation. The minor discrepancies may be explained by the fact that Ms. Mercer did not anticipate that InnoSys would question her about her retention of work emails or the business plan;, which was unrelated to the reasons for her termination at issue in the *1035 unémployment benefits hearing. Once she was given notice of the claims InnoSys raised in this litigation, she could have simply produced more precise testimony, Moreover, her transfer of work emails to her Gmail account and her acquisition of an electronic copy of the business plan also do not necessarily bespeak a nefarious intent to acquire InnoSys's trade secrets for later distribution or use. Ms. Mercer informed InnoS§Sys's IT specialist of her intent to forward her work emails to Gmail and InnoSys does not contend that it discouraged or forbade this action. And Ms. Mercer's supervisor instruct ed her to review the business plan the day before she copied it to a thumb drive. Thus, her actions could have been motivated by nothing more than her stated desire to work from home, something she often did. Furthermore, the fact that she openly revealed to InnoSys that she had the emails and business plan by filing them in the unemployment benefits proceeding, apparently unaware that she had violated any legal duties by retaining the files after her termination, indicates that she did not intend to secretly use or distribute InnoSys's documents.
1 94 However, these are not the only inferences that could be drawn from the evidence. A fact-finder could conclude that Ms. Mercer intentionally lied during the employment benefits hearing in. an attempt to avoid suspi-clon of wrongdoing. And the acquisition of emails, and the business plan in a manner that allowed. Ms. Mercer to retain them after her termination could itself be seen as an indication of an infent to use or distribute these documents, Ree E.L DuPont de Nem-ours & Co. v. Kolon Indus., 894 F.Supp.2d 691, 711 (E.D.V3.2012) (in determining the scope of an injunction, courts may "assess[ 1 the misappropriator's conduct in effecting the misappropriation"). Thus, if Ms. Mercer had access to trade secrets, summary judgment on the injunction claim likely would be inappropriate because Ms. Mercer's intent to use or distribute the information at some point in the future would be subject to conflicting inferences, But that is not the case here. InnoSys argued below that Ms. Mercer's acquisition of work emails . and documents created a danger 'of future harm In-noSys did not, however, present any ev1dence that Ms. Mercer retained copies of InnoSys documents after she deleted, them from her Gmail account and thumb drive. Supre T179-86. Absent any evidence that Ms. Mercer had, the ability to use or distribute the. documents, the question of her intent to do so is irrelevant. [3]
*1036 III, SUMMARY JUDGMENT ON INNOSYS$ BREACH OF FIDUCIARY DUTY CLAIM
T 95 As with the contract and misappropriation claims, the district court dismissed In-noSys's claim for breach of fiduciary duty on the grounds that InnoSys failed to establish damages stemming from Ms. Mercer's alleged breach. Because the breach of fiduciary duty claim rests upon the same evidence and reasoning as the contract and misappropriation claims, I would affirm for the same reasons stated above. I would also affirm on the additional ground that the breach of fidu-clary duty cause of action is precluded by the UTSA.
¶96 The UTSA explicitly states that "this chapter displaces conflicting tort, restitution-ary, and other law of this state providing civil remedies for misappropriation of a trade secret," Utah Code § 13-24-8(1), unless the remedy sought is contractual, a civil remedy that is "not based upon misappropriation of a trade secret," or eriminal, id. § 18-24-82). Thus, civil remedies that are "based upon misappropriation of a trade secret" are precluded by the UTSA. In other words, "a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information." CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC, 2012 UT App 60, 48, 274 P.3d 317; accord Frantz v. Johnson, 116 Nev. 455, 999 P.2d 851, 357-58 (2000) (examining an identical statutory provision and determining that a breach of fiduciary duty claim was preempted by Nevada's UTSA).
~ 197 It is clear that in this case InnoSys's claim for breach of fiduciary duty is based upon the same factual allegations that would support its claim for misappropriation of trade secrets. InnoSys argues that Utah law imposes a fiduciary duty upon employees who receive confidential information during the course of their employment to (a) keep that information confidential, (b) not compete with their employer by using that information, and (c) return the information upon termination. InnoSys then alleges that it disclosed confidential information to Ms. Mercer under the protection of a signed NDA (thereby giving rise to the fiduciary duty) and that Ms. Mercer subsequently breached that duty by disclosing the confidential information during the DWS hearing. But as shown above, InnoSys must utilize these same facts to substantiate its claim for misappropriation of trade secrets. Therefore, InnoSys's claim for breach of fiduciary duty is preempted by the UTSA, and its dismissal was proper for this additional reason.

. See Litton Sys., Inc. v. Ssangyong Cement Indus. Co., 107 F.3d 30, 1997 WL 59360, at "7-8 (Fed.Cir.1997) (holding that California's codification of the UTSA requires plaintiffs to show damages in one of the three listed categories); Firetrace USA, LLC v. Jesclard, 800 F.Supp.2d 1042, 1054 (D.Ariz.2010) (granting summary judgment to defendant former employee because "[pllaintiffs bald] 'not met their burden to overcome summary judgment by showing evidence they were proximately damaged by [defendant's] use of confidential information"); Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F.Supp.2d 1134, 1142 & n. 8 (M.D.Fla.2007) (holding that "(lf [plaintiff] cannot show at trial ... that [it] suffered any damages in the actual loss of such materials, [plaintiff] cannot recover for the misappropriation"); Alphamed Pharm. Corp. v. Arriva Pharm., Inc., 432 F.Supp.2d 1319, 1335-39 (S.D.Fla.2006) (granting judgment as a matter of law in favor of a defendant because the plaintiff produced no evidence of "an actual loss, unjust enrichment, or a reasonable royalty related to . the misappropriation of [the plaintiff's] trade secrets"), aff'd, 294 Fed.Appx. 501 (11th Cir.2008); Storage Tech. Corp. v. Cisco Sys., Inc., No. CIV.00-2253 (JNE/JGL), 2003 WL 22231544, at *9-10 (D.Minn. Sept. 25, 2003) (holding that the defendant was "entitled to summary judgment because [the plaintiff] failled] to submit a viable damages theory" for actual losses, unjust enrichment, or a reasonable royalty) aff'd, 395 F.3d 921 (8th Cir.2005); FAS Techs., Ltd. v. Dainippon Screen Mfg. Co., No. C 00-01879 CRB, 2001 WL 637451, at *3-4 (N,.D.Cal. May 31, 2001) (holding that a plaintiff seeking to recover damages under the California codification of the UTSA must show evidence of harm); News Am. Mktg. In-Store, Inc. v. Marquis, 86 Conn.App. 527, 862 A.2d 837, 846 (2004) ("Actual damage is a necessary element that must be proven by the plaintiff to prevail on its trade secrets claim."); Unilogic, Inc. v. Burroughs Corp., 10 Cal.App.4th 612, 12 Cal.Rptr.2d 741, 748-50 (1992) (affirming judgment of nonsuit where plaintiff admitted it suf-, fered no financial loss and did not show evidence of unjust enrichment or reasonable royalty).

. In support of its argument that the district court improperly granted summary judgment, the majority also quotes Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-36 (9th Cir.1986), which states: "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial protection of its trademark." Supra ¶ 44. Although the relative burden borne by the defendant is certainly relevant when a court weighs the equities of granting an injunction, a plaintiff may not be relieved of the burden of providing evidence of a threatened irreparable harm. - "(Unjunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92 (3d Cir.1992) (internal quotation marks omitted).

. The majority argues that there is a dispute of material fact precluding summary judgment for several other reasons. The majority opinion cites, for example, the declaration of an attorney who opined that Google's terms of service agreement may permit Google to claim ownership of intellectual property transmitted | through its email service and that the use of Gmail may constitute a public disclosure for the purpose of 'obtaining patent protection. Supra 150. But these are legal opinions (and unsupported legal opinions to boot). A nonmoving party "cannot avoid summary judgment by reference to inadmissible legal opinions." Hein-Muniz v. Aiken Reg'l Med. Ctrs., 905 F.Supp.2d 729, 742 (D.S.C. 2012), aff'd, 532 Fed.Appx. 342 (4th Cir.2013); see also Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir.1983) ("[Alllowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.").
The majority also argues that there is a dispute of material fact as to whether Ms. Mercer could gain access to the work emails in the future because she might be able to recover them from Google despite being deleted. Supra §51. Inno-Sys, however, produced only the equivocal testimony of its IT employee to support its claim that the emails still resided on Google's servers. 'The InnoSys employee testified: f
I don't know much about it but there was much talk on tech news about the fact Gmail would never let you delete a message.... [Elven ifa user deletes-this may have changed-at least fora considerable period of time, if a user deletes an e-mail from Google, you can't make it go away.
This is not evidence because InnoSys's IT employee has no personal knowledge regarding the presence of deleted emails on Google's servers, nor was he qualified to give expert testimony regarding Google's servers. Moreover, the employee gave no testimony regarding a user's ability to tetrieve deleted emails from Google.
Finally, the majority suggests that Ms.. Mercer could retrieve paper copies of the emails from the file of her DWS proceedings. Supra 52. But because this theory was' not advanced below or in the appellate briefs; a key. factual predicate to this argument is missing from the record. There appears to be no record evidence that suggests the emails were retained in DWS's files of the unemployment benefits proceedings. Furthermore, there is no indication that Ms, Mercer would seek to access the DWS files in the future. See Campbell Soup Co. 977 F.2d at 92 ("[(AJn *1036 injunction [will not] be issued to restrain one from doing what he is not attempting and does not intend to do." (internal quotation marks omitted)).